IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE VALDIVIA,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

CIVIL 13-1439 (DRD)
(CRIMINAL 03-0331 (DRD))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255

PREFACE

As a preface to my proposed findings to the court, and after having reviewed at length the multi-faceted argument of petitioner, with attached exhibits, including affidavits, the response of the United States, the trial court docket, decision of the court of appeals, and this year's Alleyne decision[1], it is clear to me that petitioner was zealously represented by retained trial counsel, court-appointed appellate counsel, and jail house counsel.  As to the two former attorneys, the question before the court is whether such zeal as apparent from the docket and court opinions translates into adequate representation under the Sixth Amendment.  Considering the extraordinary nature of the writ petition seeks from this court, it is difficult to conclude that petitioner's right to effective legal representation, a right to which he was

_____

[1]Alleyne v. United States, 133 S.Ct. 2151 (2013), decided June 17, 2013.

CIVIL 13-1439 (DRD)                    2
(CRIMINAL 03-0331 (DRD))

entitled at trial and on appeal, was violated by the attorneys whose

professional performance he vigorously attacks in the pleadings before the

court.

## I.  INTRODUCTION

Petitioner was indicted on November 21, 2003 in both counts of a two-count

indictment. (Crim. No. 03-331, Docket No. 7.)  Carlos J. Pabon was also indicted.

Petitioner was charged in the first count in that, from on about October 1, 2001

up to April 30, 2003, in the District of Puerto Rico and elsewhere within the

jurisdiction of this court, both defendants did knowingly, willfully, intentionally,

and unlawfully conspire, confederate, and agree together and with diverse other

persons to the Grand Jury known and unknown, to commit an offense against the

United States, that is, to possess with intent to distribute one kilogram or more

of heroin, a Schedule I Narcotic Drug Controlled Substance, all in violation of Title

21, United States Code, Section 841(a)(1).   All in violation of 21 U.S.C. § 846.

(Criminal 03-331, Docket No. 7).   Counts Two charges that  from on about

October 1, 2001  up to April 30, 2003, in the District of Puerto Rico and elsewhere

within the jurisdiction of this court, both defendants did willfully, knowingly,

intentionally, and unlawfully conspire, confederate, and agree together and with

diverse other persons to the Grand Jury known and unknown, to commit an

offense against the United States, that is, to import into the United States, from

CIVIL 13-1439 (DRD)                              3
(CRIMINAL 03-0331 (DRD))

a place outside thereof, to wit: Aruba, one (1) kilogram or more of heroin, a Schedule I Narcotic Drug Controlled Substance, all in violation of Title 21, United States Code, Section 952(a).   All in violation of Title 21, United States Code, Section 963.

Court-appointed counsel Juan M. Masini-Soler was assigned to represent petitioner on November 24, 2003. (Criminal 03-331, Docket No. 11).   Attorney Lixandra Osorio-Felix filed a notice of appearance on the following day when petitioner was arraigned and entered a not guilty plea.   Attorney Masini-Soler was then relieved of representation.   Defense counsel filed a flurry of disclosure motions on December 1, 2003. (Criminal 03-331, Docket Nos. 17-23).   Attorney Nicolas Nogueras filed a notice of appearance on December 10, 2003. (Criminal 03-331, Docket No. 29).   A motion for bill of particulars was filed on March 10, 2004. (Criminal 03-331, Docket No. 45).   An emergency motion for discovery and inspection was also filed on that date. (Criminal 03-331, Docket No. 47).   Defense counsel also sought a meeting with two Task Force agents. (Criminal 03-331, Docket No. 48).

On March 28, 2005, petitioner moved to dismiss the indictment. (Criminal 03-331, Docket No. 91).   The motion was denied.   Petitioner filed another series of motions on June 3, 6, 9 and 10, 2005. (Criminal 03-331, Docket Nos. 98-103, 111-16, 118-19).   Another motion to dismiss was filed on July 15, 2005. (Criminal

CIVIL 13-1439 (DRD)                    4
(CRIMINAL 03-0331 (DRD))

03-331, Docket No. 129).  A motion to dismiss based upon a violation of the right to speedy trial was filed January 31, 2006. (Criminal 03-331, Docket No. 154). Another motion to dismiss was filed on February 2, 2006. (Criminal 03-331, Docket No. 156).  Suppression motions were also filed. (Criminal 03-331, Docket Nos. 100, 102, 103, 118, 125).   During the pretrial period, numerous conferences were held with the court.  (Criminal 03-331, Docket Nos. 72, 76, 82, 87).  Two interlocutory appeals were also filed.

Trial began on February 6, 2006 and ended on February 23, 2006 with a verdict of guilty. (Criminal 03-331, Docket No. 186).  Attorney Laura Maldonado joined the legal representation on March 2, 2006 and both attorneys Nicolas Nogueras and Lixandra Osorio-Felix moved to withdraw legal representation on March 7 and 9, 2006. (Criminal 03-331, Docket Nos. 194, 196).  Attorney Rachel Brill was appointed to represent petitioner on June 22, 2007. (Criminal 03-331, Docket No. 240).  After numerous delays and settings, sentencing was finally held on March 28, 2008. (Criminal 03-331, Docket No. 255).   Court-appointed counsel filed a comprehensive sentencing memorandum urging imposition of the statutory minimum.  (Criminal 03-331, Docket No. 254).  Petitioner was sentenced to 210 months imprisonment.  A notice of appeal was filed on March 31, 2008. (Criminal 03-331, Docket No. 259.)   On May 16, 2012, the United States Court of Appeals

1
2
CIVIL 13-1439 (DRD)                    5
(CRIMINAL 03-0331 (DRD))

3
4
5
for the First Circuit affirmed the conviction in a lengthy opinion.  United States v. Valdivia, 680 F.3d 33 (1st Cir. 2012).

6
7
8
9
10
11
12
13
14
15
The court of appeals addressed what it described as a litany of alleged errors by the district court, such as the denial of a motion to dismiss for speedy trial violations (The Speedy Trial Act), inappropriate comments and misleading jury instructions, witness bolstering, the district court's allowing inadmissible hearsay and overview testimony, allowing a fact witness to testify as an expert[2], denying multiple requests to suppress Aruban wiretap evidence, and improperly applying the sentencing guidelines during the sentencing hearing.   United States v. Valdivia, 680 F.3d at 37.

16
17
18
19
20
21
22
23
The district court ultimately held petitioner personally responsible  for thirty kilograms of heroin and found that he had exercised managerial authority over another participant in the criminal activity.  He argued on appeal that the sentence was excessive but the appellate court noted that ultimately an advisory guideline range of 292-365 months was provided for and the sentencing court departed significantly in sentencing petitioner to a term of 210 months. United States v. Valdivia, 680 F.3d at 53.

24
25
26
27
28

---

[2]This was subject of a concurring opinion.  United States v. Valdivia, 680 F3d at 56-61.

CIVIL 13-1439 (DRD)                    6
(CRIMINAL 03-0331 (DRD))

Finally, the appellate court noted that there were no reversible errors, cumulative or otherwise.   United States v. Valdivia, 680 F.3d at 55.   A petition for a writ of certiorari was denied. Valdivia v. United States, 133 S.Ct. 565 (2012).

## II. MOTION UNDER 28 U.S.C. § 2255

This matter is before the court on petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, filed on June 7. 2013. (Docket No. 1.)   Petitioner  argues that he was denied effective assistance of trial counsel due to numerous errors in the proceedings, errors also caused by the prosecutor, the trial judge and the court interpreter.  He specifically argues that the Jones Act was violated because of the faulty procedure used with transcripts of foreign wiretaps. Because of the irregularities and errors, the Aruban wiretaps were arguably tainted.   Thrown into this category of error is the court's failure to give jury instructions defining reasonable doubt, circumstantial evidence, and reasonable foreseeable.  Petitioner also attacks the sufficiency of the voir dire of the venire persons as it relates to their fluency in the English language (Docket No. 1-1 at 4).

Petitioner's second argument is that the trial judge was unfair to the defense, such as having the jury listen to evidence in the absence of the defendant, and made insulting results to defense counsel, as well making remarks in Spanish to the jury.   The trial judge is also charged with rushing the trial to a close.  The third issue is actually directed to defense counsel and not so much to

CIVIL 13-1439 (DRD)                    7
(CRIMINAL 03-0331 (DRD))

the court, although petitioner attacks defense counsel's failing to object to the judge's remarks and faulty jury instructions, thus resulting in an unreasonable sentence.

Petitioner argues that appellate counsel was ineffective in not challenging the jury instructions.  He attributes to appellate counsel a fatal ineffectiveness for not raising all of the points that are now being raised.  Finally, petitioner argues that defense counsel Nogueras utilized family members to convince him not to testify on his own behalf.   He asks for an evidentiary hearing and the appointment of counsel.   Petitioner includes an affidavit by his wife Ileana Rodriguez Perez in relation to conversations had with family members and attorney Nogueras, and the pressure counsel Nogueras asserted on her and family members in convincing petitioner not to testify at trial. (Docket No. 3-1).  He also includes his own affidavit denying the factual and legal basis for his conviction, his lack of participation in any group that imported heroin, his lack of supervisory role in such a group, and his failure to have given to Jeffrey Scott Grueninger, a cooperating co-conspirator and trial witness, any consideration for controlled substances. (Docket No. 1-2).  Petitioner includes excepts of the trial transcript including part of the court's final jury instructions on reasonable doubt (Docket No. 1-3 at 4-5). Petitioner also provides excerpts on which he relies to reflect to bias of the trial judge, such as wanting to finish the case, the Jones Act issue, proceedings held

CIVIL 13-1439 (DRD)                      8
(CRIMINAL 03-0331 (DRD))

outside the presence of the jury, corrections or amendments of the tape transcripts and the prosecutor arguing in the Spanish language. (Docket No. 1-3). He asks over and over for an evidentiary hearing to further develop the arguments and ultimately dismissal of the charges with prejudice based upon the invited structural errors which permeate the record. (Docket No. 1 at 10-11).

The government filed a response in opposition to petitioner's motion on July 1, 2013. (Docket No. 5). It argues that there was no violation of the Jones Act, 48 U.S.C. § 864, but also that petitioner's collateral attack is generally undeveloped and where not undeveloped has been considered and decided at trial and again on appeal. As to the wiretap evidence admission, the government notes that the argument is another motion to suppress evidence cloaked as a collateral challenge. The government goes into detail regarding the method used by the district in reviewing and correcting the wiretap transcript translations. See United States v. Morales-Madera, 352 F.3d 1 (1st Cir. 2003). The government argues that petitioner presents no factual predicate for attacking the voir dire procedure used by the court. It further points out the erroneous argument by quoting parts of the transcript where defense counsel Nogueras questions the fluency of one of the veniremen. Petitioner also argues that the prosecutor, Assistant United States Attorney Warren Vazquez, addressed the jurors in Spanish during the closing argument, thus violating the Jones Act, and notes that in context there was no

CIVIL 13-1439 (DRD)                    9
(CRIMINAL 03-0331 (DRD))

reversible error.  See United States v. Rivera-Rosario, 300 F.3d 1, 10 (1ˢᵗ Cir.

2002).

On August 13, 2013, petitioner filed a reply to the government's response.

(Docket No. 10.)   He prefixes his reply by reminding the court that because he

appears pro se, his pleadings are considered more liberally, however inartfully or

opaquely pleaded,  than those penned and filed by an attorney. See Erickson v.

Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  He asks the court's indulgence

in relation to such factors as confusion of legal theories, poor syntax, sentence

construction and lack of familiarity with pleadings.  Certainly, judges are to hold

pro se complaints "to less stringent standards than formal pleadings drafted by

lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).  Petitioner's

pleadings, however, are sophisticated and written as though created by a lawyer.

Nevertheless, the general concepts of relaxed stringency apply.

Petitioner also replies that if has not fully developed his claim, a Certificate

of Appealability should issue at either the trial level or appellate level.  (Docket No.

10 at 2).  Upon reply, petitioner stresses that the court should apply the holding

in the recent Supreme Court case,  Alleyne v. United States, 133 S.Ct. 2151

(2013) to this case and apply a plain error standard to the failure of the court to

have instructed the jury to find petitioner responsible for a specific drug quantity

beyond a reasonable doubt.  He also argues that Alleyne is applicable to cases on

CIVIL 13-1439 (DRD)                    10
(CRIMINAL 03-0331 (DRD))

direct appellate review because <u>Alleyne</u> applies the holding of <u>Apprendi v. New</u> <u>Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000). <u>See United States v. Colon-Solis</u>, 354 F.3d 101 (1st Cir. 2004).   He extends this argument to stress that the holding of <u>Alleyne</u> is applicable to cases on collateral review, pointing out that such a finding of retroactive effect follows "as night follows day". Docket No. 10 at 4. Petitioner again stresses his entitlement to an evidentiary hearing.  Specifically, he notes that defense attorney Nogueras had the wiretap translations in his possession for two years and did not correct them with the help of his own expert. Petitioner stresses the violations of the procedures outlined in <u>United States v.</u> <u>Morales-Madera</u>, *supra*.

Petitioner repeats much of the argument of his motion, such as error in the court's failing to define reasonable doubt. (Docket No. 10 at 7-8).  Petitioner concludes the reply by attacking the trial judge as to his ethics, and trial and appellate counsel as to their defective performances, adding that he was denied the right to testify after telling his lawyer that he wanted to testify.  (Docket No. 10 at 10).

Having considered the arguments of the parties and for the reasons set forth below, I recommend that petitioner Valdivia's motion to vacate, set aside, or correct sentence be DENIED without an evidentiary hearing.  I explain.

II.  DISCUSSION

CIVIL 13-1439 (DRD)                    11
(CRIMINAL 03-0331 (DRD))

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-27 n.3, 82 S.Ct. 468 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).   The burden is on the petitioner to show his entitlement to relief under section 2255, David v. United States, 134 F.3d at 474, including his entitlement to an evidentiary hearing. Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).   It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case." United States v. McGill, 11 F.3d at 226 (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)).   "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" United States v. McGill, 11 F.3d at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)).

CIVIL 13-1439 (DRD)                    12
(CRIMINAL 03-0331 (DRD))

Collateral attack on non constitutional and non jurisdictional "claims are properly brought under section 2255 only if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (quoting Hill v. United States, 368 U.S. at 428, 82 S.Ct. 468).   A claim of ineffective assistance of counsel is one such constitutional violation that may be raised by way of a section 2255 motion.  See United States v. Kayne, 90 F.3d 7, 14 (1st Cir. 1996).

INEFFECTIVE ASSISTANCE OF COUNSEL

"In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence." U.S. Const. amend. 6.  To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984).  "[T]he 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (quoting Yarborough v. Gentry, 540 U.S. 1, 8, 124 S.Ct. 1 (2003)).  The two part test for constitutionally ineffective assistance of counsel was set forth in the Strickland case.  Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. 2052; see also Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996); Knight v. United

CIVIL 13-1439 (DRD)                    13
(CRIMINAL 03-0331 (DRD))

States, 37 F.3d at 774.  The petitioner "must show that 'counsel's representation fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced his defense.'"  Owens v. United States, 483 F.3d 48, 63 (1st Cir. 2007) (quoting Strickland v. Washington, 466 U.S. at 687-88, 104 S. Ct. 2052); see Cruz v. Municipality of Dorado, 780 F. Supp. 2d 157, 159 (D.P.R. 2011).  The defendant bears the burden of proof for both elements of the test. See Cirilo-Muñoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005) (citing Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994)).

"'[J]udicial scrutiny of counsel's performance must be highly deferential,' and 'every effort [should] be made to eliminate the distorting effects of hindsight.'" Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (quoting  Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. 2052); see United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012).  The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Smullen v. United States, 94 F.3d at 23 (quoting Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. 2052).

The second element of the Strickland test "also presents a high hurdle.  'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'"  Argencourt v. United States, 78 F.3d at 16 (quoting Strickland v.

1  CIVIL 13-1439 (DRD)                    14
2  (CRIMINAL 03-0331 (DRD))

3
4  Washington, 466 U.S. at 691, 104 S. Ct. 2052).  There must exist a reasonable
5  probability that, "but for counsel's unprofessional errors, the result of the
6  proceeding would have been different." Dugas v. Coplan, 428 F.3d 317, 334 (1st
7  Cir. 2005) (quoting Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. 2052).
8
9  "[A] reasonable probability is one 'sufficient to undermine confidence in the
10 outcome.'" González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001)
11 (quoting Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. 2052).

12                              III. TRIAL COUNSEL

13          Petitioner argues that defense counsel Nogueras performed in a
14 constitutionally defective manner, thus violating his Sixth Amendment right to
15
16 counsel.  The docket of the case, as well as a summary of counsel's performance
17 in the appellate opinion belie the accusation.   None of the errors considered by the
18 appellate court, beginning with the waiver of the Speedy Trial argument, resulted
19
20 in plain error.  Regardless of whether trial counsel preserved the issues for appeal,
21 such as the trial judge's arguably prejudicial comments and posture relating to the
22 voice identification of the defendant on certain wiretap recordings, the appellate
23 court concluded, after a painstaking review of the trial record, that the judge's
24
25 actions did not amount to reversible error. United States v. Valdivia, 680 F.3d at
26 43.  I consider a list of the issues raised by petitioner as to the shortcomings his
27 attorney suffered during the trial proceedings.

28

CIVIL 13-1439 (DRD)                    15
(CRIMINAL 03-0331 (DRD))

A. ARUBAN WIRETAP TRANSLATIONS

Petitioner protests the method in which the translation process was carried

out during and before trial, including the court's providing its own translation of

different parts of the wire transcripts.  The translations were in the possession of

defense counsel two years before trial, certainly adequate time to prepare for trial.

See United States v. Bravo-Fernandez, 792 F. Supp. 2d 172, 175 (D.P.R. 2011).

There was certainly much disagreement among the parties as to the accuracy of

the translations and therefore accuracy of the transcripts.  Under these

circumstances, ". . .it is advisable for the district court to try to obtain a stipulated

transcript from the parties before trial or, at least, before a transcript is used.

Failing such stipulation, each party should be allowed to introduce its own

transcript of the recording provided that it is properly authenticated".  United

States v. Morales-Madera, 352 F.2d at 8.

> "In the case of tapes of non-English conversations . . .[i]f the parties
> do not agree that the English transcript submitted is correctly
> translated, the preferred solution is to obtain agreement from counsel
> as to an accurate translation.  If agreement is not possible, the district
> court should have the parties present testimony from translators and
> allow the jury to decide the issue. See Weinstein & Berger, Weinstein's
> Federal Evidence § 901.09."
>
> Id.

The trial court took pains to assure that the transcripts and translations were

accurate under the normal pressure associated with trial.  This was clearly done

CIVIL 13-1439 (DRD)                    16
(CRIMINAL 03-0331 (DRD))

outside the presence of the jury.  Case law provides guidelines for courts to follow and this court is no stranger to issues with transcripts and translations since such are the rule and not the exception in this district.  It is clear that the United States complied with its obligation to provide transcripts and translations to petitioner in sufficient time to prepare for trial.  That defense counsel waited for trial to attack the accuracy of the production does not trigger a conclusion of inefficacy. Considering the nature of the numerous motions that were filed and made orally, the issue could very well have been left for trial although better resolved beforehand.  Nevertheless, there was a general agreement on how to resolve the issue at trial.  It is again difficult to conclude that resolution of the translation dilemma triggered a Sixth Amendment violation, particularly when the court found a reasonable and agreeable solution to the problem after defense counsel registered late but meaningful protest.

B.  APPLICABILITY OF ALLEYNE TO DRUG QUANTITIES

Petitioner's reply brief argument related to Alleyne stresses that the jury did not consider the drug amount he was attributed, but the verdict form clearly provided the jury with the statutorily provided range of ten years to life by asking the jury if petitioner was held accountable for one kilogram or more of heroin.  See 21 U.S.C. § 841(b)(1)(A)(I). (Criminal No. 03-331, Docket No. 186).  The judge instructed the jury to make a specific finding as to the quantity of heroin

CIVIL 13-1439 (DRD)                    17
(CRIMINAL 03-0331 (DRD))

attributable to him. (Docket No. 1-3 at 120-21). The judge later made particularized findings by a preponderance of the evidence.  United States v. Valdivia, 680 F.3d at 52-54; See United States v. Rodriguez, 731 F.3d 20, 31 (1st Cir. 2013), citing United States v. Acosta-Colon, ___F.3d___, 2013 WL 6654386 (Dec. 18, 2013) at *18.  Furthermore, notwithstanding petitioner's argument that night follows day, and that Alleyne applies to this case,  Alleyne has not been made retroactive to cases on collateral review.[3]  That is clear from the decision itself and the case law among the circuits holding that Alleyne does not apply to cases on collateral review.  In re Kemper, 735 F.3d 211, 212 (5th Cir. 2013); United States v. Redd, 735 F.3d 88, 91 (2d Cir. 2013); In re Payne, 733 F.3d 1027, 1029-30 (10th Cir. 2013); Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013); cf. United States v. Doe, ___F.3d___,___, 2013 WL 6697824 (December 20, 2013) at  *12-*14.

C.   RIGHT TO TESTIFY

Petitioner has a "'. . .fundamental constitutional' right to testify in his own defense, Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S.Ct. 2704 (1987), and that . . .right must be 'unfettered.'" Harris v. New York, 401 U.S. 222, 230, 91 S.Ct. 643 (1971); Owens v. United States, 483 F.3d at 58; see Rosenthal v. O'Brien, 713 F.3d 676, 687 (1st Cir. 2013).  Petitioner was aware of his right to testify, as

---

[3]Petitioner's motion was filed ten days prior to the Supreme Court's handing down the Alleyne decision.

CIVIL 13-1439 (DRD)                    18
(CRIMINAL 03-0331 (DRD))

is clear from his affidavit and that of his spouse, Ileana Rodriguez Perez, who was told by attorney Nogueras, emphatically and repeatedly, to pressure petitioner into not testifying, to "forget about 'sitting' as his own witness in trial..." (Docket No. 3-1 at 1, ¶ 3). Petitioner attests: "Mr. Nicolas Nogueras, did everything in his power to stop me from testifying in my own behalf at trial. Including going to my sister, wife and other family members to have them persuade me not to testify at trial in my own behalf. I still to this day desire to testify at any re-trial I may have." (Docket No. 1-2 at 1, ¶ 3). Petitioner notes that he wanted to testify and deny any connection with any nefarious enterprise. That did not happen because he and his family were pressured into having him not testify. Succumbing to that pressure, as related by Ileana Rodriguez Perez, petitioner decided not to testify. Conclusively, petitioner was aware of his right to testify, the district court was not aware of any polemic between defense counsel and petitioner, and ultimately, albeit under pressure from family members and counsel, petitioner decided not to testify. Cf. Siciliano v. Vose, 834 F.2d 29, 30-31 (1st Cir. 1987). If one compares the conclusory statements of petitioner with the evidence presented at trial, including incriminating recordings of petitioner's voice[4], it is not hard to conclude the advice of defense counsel was reasonable under the circumstances. See e.g. Tormes-Ortiz v. United States, 472 F. Supp. 2d 122, 126 (D.P.R. 2006); Ovalle

_____

[4]See United States v. Valdivia, 680 F.3d at 44-45.

CIVIL 13-1439 (DRD)                    19
(CRIMINAL 03-0331 (DRD))

Marquez v. United States, 258 F. Supp. 2d 7, 13 (D.P.R. 2003).   Assuming

petitioner's knowledge of the right to testify, whether he testified or not under the

circumstances was primarily a matter of trial strategy to be decided between the

defendant and his attorney.   Alicea-Torres v. United States, 455 F. Supp. 2d 32,

50 (D.P.R. 2006), citing Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891 (1972).

Petitioner has presented conclusory allegations in support of his argument that he

was denied the right to testify. See Passos-Paternina v. United States, 12 F.Supp.

2d 231, 239 (D.P.R. 1998). Therefore, this argument lacks merit.

D.  ERRORS IN JURY INSTRUCTIONS

This is a general issue that is undeveloped, notwithstanding petitioner's

protests to the contrary.  Not only is there no discernable error in the instructions,

particularly the one on reasonable doubt, the issue was raised on appeal and

rejected.   United States v. Valdivia, 680 F.3d at 42-44. I have reviewed the

instructions the adequacy of which is attacked in plenary fashion by petitioner.

A constitutional violation is simply lacking.  A review of the voir dire procedure

results in the same conclusion.   The court went through the classic voir dire

questions, interrupting the process to consider particular issues.  As to the English

proficiency of the venire persons, the court not only asked directly as to the venire

persons' adequate knowledge of English, but questioned two jurors specifically

prior to entering the individual voir dire stage.  (Crim. No. 03-331, Docket No.

CIVIL 13-1439 (DRD)                    20
(CRIMINAL 03-0331 (DRD))

273, Tr. at 50-52).  *A fortiori*, petitioner's attack on the court's voir dire and jury instructions lacks merit.

### E.  CONDUCT OF TRIAL JUDGE

This is an other issue that bears little comment. The court of appeal reviewed the work of the trial judge in context and found no error.  See United States v. Valdivia, 680 F.3d at 42-45.  Isolated events such as  an evanescent comment, even in Spanish, or allusion to the age of counsel, or the desire to avoid delay do not reach a level of constitutional consequence which triggers collateral relief. There is no question here of further developing the record.  Petitioner picks at the record to highlight isolation comments made by the trial judge but fails to develop a cohesive argument. This conclusion has nothing to do with his  confusing of legal theories, poor syntax, sentence construction and lack of familiarity with pleadings. As a whole, petitioner's argument is simply inadequate and undeveloped.  See Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Berroa Santana v. United States, 939 F. Supp. 2d 109, 121 (D.P.R. 2013). The argument related to the statements of the trial judge were considered by the court of appeals and rejected.  The court noted, "The district judge conscientiously addressed the issues presented to him and insured that the defendant was tried fairly." United States v. Valdivia, 680 F.3d at 55.  Collateral review is hardly the vehicle to revisit the work of an appellate court

CIVIL 13-1439 (DRD)                    21
(CRIMINAL 03-0331 (DRD))

under the circumstances, particularly if one consider the appellate court's serene accolade of an embattled judge.

IV.  APPELLATE COUNSEL

Petitioner attacks appellate counsel's performance for not raising the issues he raises now and that should have been raised below also.  Appellate counsel must provide reasonable professional judgment in presenting the appeal.  Evitts v. Lucey, 469 U.S. 387, 396-97, 105 S. Ct. 830  (1985); Brown v. United States, 42 F.Supp. 2d 122, 127 (D.P.R. 1998).   This does not mean that they have to have raised every issue that an unhappy appellant can glean from an imperfect record.  Counsel is allowed to select from possible claims that are more meritorious in order to maximize the likelihood of success on appeal. See Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746 (2000); Wyman v. United States, 62 Fed Appx. 364, 366 (1st Cir. 2003).

Appellate counsel quickly familiarized herself with the case once appointed, as reflected in the compelling content of the sentencing memorandum.  Appellate counsel obviously chose what she considered major points and  her best possible issues on appeal.  Indeed, much of which petitioner argues in his motion was actually considered on appeal and rejected.   See e.g. Jones v. Barnes, 463 U.S. 745, 751-52, 103 S. Ct 3308 (1983).

CIVIL 13-1439 (DRD)                    22
(CRIMINAL 03-0331 (DRD))

Petitioner repetitively argues that appellate counsel was deficient. However, a review of the trial transcript reflects that not only was it a hard fought case, but that appellate counsel pressed numerous claims in the appeal, establishing that the trial process was not perfect. "But trials rarely are." United States v. Valdivia, 680 F.3d at 55.  It is impossible to find under the circumstances that appellate counsel somehow incurred in a constitutional violation of petitioner's right to effective assistance of counsel.

When a federal prisoner raises a claim that has been decided on direct review, he ordinarily cannot attempt to relitigate the claim in a section 2255 motion.  Withrow v. Williams, 507 U.S. 680, 720-21 (1993); Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002); Argencourt v. United States, 78 F.3d at 16 n.1; Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994). The court of appeal carefully combed through the entire record of this case and did not find errors raised by petitioner.   The appellate attack on the wiretap evidence focused on the Fourth Amendment and not on the procedure used in securing translations.  But the appellate court noted the mass of attacks on the wiretap evidence before and during trial.  "Under Strickland v. Washington, . . . counsel is not incompetent merely because he may not be perfect.  In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out

CIVIL 13-1439 (DRD)                    23
(CRIMINAL 03-0331 (DRD))

counsel as incompetent." Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999); Perocier-Morales v. United States, 887 F. Supp. 2d 399, 418 (D.P.R. 2012).

Neither trial defense counsel nor appellate counsel can hardly be called incompetent considering their performances as reflected in this record.   Trial counsel bombarded the court with motions during the same period of time he was attempting to negotiate a plea with the government.   Appellant counsel was no less forceful in her attack on perceived errors.   Petitioner has not satisfied either prong of Strickland.

In view of all of the above, I find that petitioner has not established that his trial counsel's representation fell below an objective standard of reasonableness. See  Strickland v. Washington, 466 U.S. at 686-87, 104 S. Ct. 2052; Moreno-Espada v, United States, 666 F.3d 60, 65 (1st Cir. 2012);  United States v. Downs-Moses, 329 F.3d 253, 265 (1st Cir. 2003).   It is impossible to find that claimed error has produced "'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'"  Knight v. United States, 37 F.3d at 772 (quoting Hill v. United States, 368 U.S. at 428).   Similarly,  it is difficult to find that ". . .counsel's conduct so undermined the proper functioning of the adversarial process that the trial [could not] be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. at 686, 104 S. Ct. 2052.

CIVIL 13-1439 (DRD)                    24
(CRIMINAL 03-0331 (DRD))

I add as a postscript the following. Petitioner argues that if he has not fully developed his claim, a Certificate of Appealability should issue at either the trial level or appellate level.  Petitioner has had ample opportunity to develop his claims, has submitted affidavits and a reply memorandum relying on a case that did not exist when his motion was filed. Most of his argument has been resolved on appeal or is meritless based upon what the actual record reveals.  In any case, the matter of issuing a Certificate of Appealability is deferred to the district court's consideration.

## V. CONCLUSION

Strickland does not guarantee perfect representation but only a reasonably competent attorney.  See Harrington v. Richter, 562 U.S. ___,___, 131 S. Ct. 770, 791 (2011).  It can hardly be gainsaid that trial and appellate counsel were reasonably competent.  Accordingly, it is my recommendation that petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made

CIVIL 13-1439 (DRD)                    25
(CRIMINAL 03-0331 (DRD))

and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

In San Juan Puerto Rico this 27th day of December, 2013.


S/ JUSTO ARENAS
United States Magistrate Judge